In the Matter of GLICK CONSTRUCTION CORPORATION et al., Petitioners, v NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, August 4, 1983

APPEARANCES OF COUNSEL

*Young, Kaplan, Ziegler & Zisselman* (*Lanny M. Sagal, Isaac W. Zisselman* and *Ellen B. Lavner* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Julie S. Mereson* and *William J. Kogan* of counsel), for respondent.

OPINION OF THE COURT

MIKOLL, J.

Petitioners contest the determination of a deficiency of franchise taxes due on their business corporations and the denial of permission to Glick Construction Corporation (Glick) to file combined franchise tax reports with Brightwater Towers, Inc. (BTI) and RCI Development Corporation (RCI) for the fiscal years ending March 31, 1971 through March 31, 1974.

The facts underlying the instant proceeding are stipulated. Glick is a corporation engaged in the construction business. During the period in issue, it owned all the issued stock of its two corporate subdivisions, BTI and RCI, and it filed combined corporate franchise tax reports under subdivision 4 of section 211 of the Tax Law with those subsidiaries. The returns were filed late for the years 1969 through 1974 due to the unexplained failure of petitioners' longtime certified accountants to prepare them. When the omission was revealed, petitioners had the returns prepared and filed by new accountants. In 1969 and 1970, the reports of Glick, BTI and RCI were prepared on a separate basis; the reports for 1971 and 1974, however, were prepared on a combined basis. The Audit Division of the Department of Taxation and Finance denied petitioners the right to file on a combined basis for the years 1971 through 1974 and issued notices of deficiency to them. A timely petition was filed by petitioners for a redetermination. Respondent sustained the notices of deficiency and this transferred CPLR article 78 proceeding to challenge that determination ensued.

BTI, a limited-profit housing company formed by Glick pursuant to article II of the Private Housing Finance Law, owns and operates Brightwater Towers, a low and moderate income housing project completed in 1965. Title to the project was held by BTI in order to qualify for New York State Housing Finance Agency (HFA) financing (see Private Housing Finance Law, art III). It was clearly recognized by both New York State and the Federal Govern-

ment that the primary incentive in regard to the owner-ship of such properties was the ability to utilize the tax losses generated by way of consolidated returns. What was not funded by HFA financing was provided through a capital contribution made by BTI's sole shareholder, Glick.

Glick organized RCI in 1970 after Local No. 365 of the Automotive Workers Union asked Glick to be general contractor and consultant/developer to a nonprofit rental housing project for the elderly to be sponsored by the union. Glick formed RCI to act as consultant/developer while Glick acted as general contractor. This was done so that Glick's financial statements would reflect only its construction activities since it was required to furnish payment and performance bonds to its institutional lend-ers and these would be considerably higher if the activities undertaken by RCI were reflected in Glick's financial statements. When the union was unable to provide the equity to finish the project, the New York State Division of Housing and Community Renewal authorized a change of concept to a limited-profit project that would be owned by a partnership formed by RCI called Seagirt Houses Associ-ates (Seagirt). Seagirt purchased, as agreed, the land from the union in 1972 at the closing of the HFA mortgage loan for the development of the project. The HFA mortgage loan represented 94.42% of the cost of the project and the remaining equity was obtained by admitting investor-limited partners into Seagirt for 50% interest in the part-nership. RCI retained a 5% interest in Seagirt as a general partner. When the development work on the project was completed in 1973, Glick merged RCI into itself. All of RCI's gross receipts in the years 1971 through 1973 repre-sented developer's fees earned on the project built by Glick.

Petitioners contend that respondent abused its discre-tion in refusing to permit the filing of franchise taxes on a combined basis. In denying petitioners' leave to file com-bined franchise tax returns, respondent held that RCI's income was entirely attributable to its own business en-deavors and not to intercompany transactions with its parent or sister corporation. Likewise as to BTI, respon-dent held that BTI's profit or loss was primarily the result

of its operation of Brightwater Towers, instead of being due to intercompany transactions.

Subdivision 4 of section 211 of the Tax Law provides that: "any taxpayer, which owns or controls either directly or indirectly substantially all the capital stock of one or more other corporations * * * may be * * * permitted to make a report on a combined basis covering any such other corporations". The purpose of the section was to permit combined filings of corporations to reflect true net income (*Matter of Coleco Inds. v State Tax Comm.*, 92 AD2d 1008; *Matter of Wurlitzer Co. v State Tax Comm.*, 42 AD2d 247, affd 35 NY2d 100).

Respondent provided by regulation which taxpayers would be allowed to file on a combined basis. In those cases in which the test of stock ownership or control set forth in the regulations was satisfied (former 20 NYCRR 5.28 [a] [repealed Jan. 1, 1976]), the applicable regulation governing the relevant time period required consideration of the following factors by respondent in determining whether to allow reporting on a combined basis (former 20 NYCRR 5.28 [b] [repealed Jan. 1, 1976]):

"(1) whether the corporations are engaged in the same or related lines of business;

"(2) whether any of the corporations are in substance merely departments of a unitary business conducted by the entire group;

"(3) whether the products of any of the corporations are sold to or used by any of the other corporations;

"(4) whether any of the corporations perform services for, or lend money to, or otherwise finance or assist in the operations of, any of the other corporations;

"(5) whether there are other substantial intercompany transactions among the constituent corporations."

In order to sustain its decision denying petitioners leave to file combined tax reports, respondent's exercise of discretion must be rational and must be supported by substantial evidence on the entire record. Its decision must be in accordance with its regulations (*Matter of Montauk Improvement v Proccacino*, 41 NY2d 913). Respondent ac-

knowledged that Glick owned all of the outstanding stock of BTI and RCI so that there is here common stock control. Thus one of the threshold tests set out in 20 NYCRR 5.28 has been met.

■ We need to address only the question of whether there is a rational basis for respondent's conclusion that there were not substantial intercorporate transactions among the corporations, which was the ground invoked by the agency in its denial of combined reporting. The evidence as to BTI indicated that Glick capitalized BTI with $370,407 in cash ($165,000 for capital stock and $205,407 for debentures) and in the sum of $1,270,593 by Glick accepting BTI's debentures in that amount in payment of Glick's fees as builder/developer for BTI. There were also substantial payments of interest and dividends from BTI to Glick with respect to debentures and stock held by Glick in the amount of $379,365 paid from March, 1971 to March, 1974. It has been conceded by respondent in the stipulated facts that BTI had to be formed by Glick to comply with the Private Housing Finance Law. Glick, wishing to take advantage of a fine business opportunity to build a substantial project, formed BTI. The purpose of BTI is well established and is indicative of a unity of purpose of these two corporations. BTI was Glick's nominee and Glick controlled BTI completely. It is conceded by respondent that the primary incentive in regard to developing projects such as Brightwater Towers was the ability of the party providing the equity capital to utilize the tax losses which would inevitably be generated by such projects. To deny petitioners the right to file a consolidated return would frustrate the important public policy behind the Private Housing Finance Law. We also find persuasive the fact that combined returns were accepted by respondent from 1964 to 1968.

■ In regard to the decision regarding RCI, the record indicates that all of RCI's gross receipts in the years 1971 through 1973, inclusive, represent developer's fees earned on the project built by Glick. The stipulated facts go on to state that "[i]n effect, RCI was merely Glick's alter ego, and all of these fees were earned by Glick". Curiously the department's field audit stated that the combined Glick —

RCI filing was denied for failure to seek prior permission. Prior approval was not required in the years in issue and, in any event, petitioners were absolved of fault for their late filings. A denial on such a basis is totally unjustified.

Based on the record and the criteria set forth in its own regulations, respondent abused its discretion in denying petitioners permission to file combined franchise tax reports for the years involved.

The determination should be annulled, and the petition granted, without costs, and the matter remitted to respondent for further proceedings not inconsistent herewith.

KANE, J. P., MAIN, YESAWICH, JR., and LEVINE, JJ., concur.

Determination annulled, and petition granted, without costs, and matter remitted to respondent for further proceedings not inconsistent herewith.